WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joyce E. Williams,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-15-02629-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Joyce Elaine Williams ("Williams"), which challenges the Social Security Administration's decision to deny benefits. (Doc. 1.) For the reasons set forth below, this Court affirms the findings of the ALJ.

**BACKGROUND**

On August 1, 2012, Williams filed an application for disability insurance benefits, alleging a disability onset date of July 1, 2010.[1] (Doc. 18 at 4.) Her claim was initially denied on November 21, 2012, and it was denied again upon reconsideration on June 11, 2013. (Tr. 12.) Williams then filed a written request for a hearing and she testified before ALJ Ted W. Armbruster on December 17, 2013. (Tr. 12.) On February 28, 2014, the ALJ issued a decision finding Williams not disabled. (Tr. 12.)

---

[1] This date was amended from March 1, 2008 during the hearing held on December 17, 2013. (Tr. 12; Tr. 32–33.)

In evaluating whether Williams was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (Tr. 13.) At step one, the ALJ found that Williams had not engaged in substantial gainful activity since her application date. (Tr. 14.) At step two, the ALJ determined that Williams suffered from the following severe impairments: anxiety and depressive disorder. (Tr. 14.) At step three, the ALJ determined that neither of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

At that point, the ALJ reached step four and made a determination of Williams's residual functional capacity ("RFC"),[3] concluding that Williams could perform work "at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple repetitive tasks and simple unskilled work with occasional changes in the work-setting; and she can occasionally interact with co-workers and supervisors, but have no direct public contact in job performance." (Tr. 16.) In making this finding, the ALJ found that Williams's subjective testimony was "less than fully credible." (Tr. 17.) The ALJ also gave little weight to Williams's treating psychiatrist, Dr. Fermo. (Tr. 19–

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[3] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

21.)  Instead, he relied on the opinions of state agency psychological consultants, finding that their opinion was entitled to greater weight because it was supported by the objective medical evidence as well as the claimant's daily activities.  (Tr. 20.)

The Appeals Council declined to review the decision.  (Tr. 1–4.)  Williams filed the complaint underlying this action on December 28, 2015 seeking this Court's review of the ALJ's denial of benefits.  (Doc. 1.)  The matter is now fully briefed.  (Docs. 18, 20, 21.)

## DISCUSSION

**I.     Legal Standard**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "more than a scintilla but less than a preponderance."  *Id.* (quotation omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).  This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

/ / /

/ / /

/ / /

## II. Analysis

### A. The Medical Opinions

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). However, there are circumstances where an ALJ may properly reject the opinion of a treating physician in favor of a non-examining physician. If an opinion is not contradicted by substantial evidence, then the ALJ must provide clear and convincing reasons for rejecting the opinion. *Id.* However, if a treating physician's medical opinion is contradicted by substantial evidence in the record, then the ALJ can reject his opinion for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 831.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* However, it may be sufficient when "consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Fermo is Williams's treating psychiatrist. His opinion conflicted with the medical opinions of the state agency psychological consultants, Drs. Pereyra and Koutrakos. (Tr. 20.) Therefore, the ALJ had to provide specific, legitimate reasons supported by substantial evidence in the record in order to discount Dr. Fermo's medical opinion. *Lester*, 81 F.3d at 831.

### 1. Daily Activities

The ALJ discredited Dr. Fermo's medical opinion on the basis that it was "inconsistent with the claimant's admitted activities of daily living." (Tr. 20.) ALJs may discredit a treating physician's opinion to the extent that it is contradicted by the

- 4 -

daily activities of the claimant. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999) (upholding an ALJ's rejection of a treating physician based, in part, on the inconsistencies between the treating psychologist's "marked limitations" and the claimant's daily activities). However, in doing so, the ALJ must be careful in categorizing daily activities as inconsistent with a claimant's alleged limitations, because "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nonetheless, an ALJ may consider inconsistencies between reported limitations and a claimant's daily activities where "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting." *Id.* Such is the case here.

The ALJ cited to specific activities that were inconsistent with the limitations Dr. Fermo outlined for Williams, and thus provided substantial evidence for discrediting Dr. Fermo's findings. Dr. Fermo found that Williams's abilities to relate to other people, attend meetings, work around the house, and socialize are severely limited by her disabilities. (Tr. 19, 476.) He also found that Williams's ability to perform simple tasks is "moderately severely" limited. (*Id.*) For purposes of Dr. Fermo's findings, "severe" is defined as being off-task for more than 21% of an 8-hour work day, whereas "moderately severe" is defined as being off-task for 16-20% of an 8-hour work day. (Tr. 20, 477.) Yet, the ALJ noted that Williams testified that her daily activities included substantial household chores, including cleaning her home, taking care of the family's laundry, providing care for the family's pets, and preparing the family's evening meal. (Tr. 21.) Therefore, according to Williams, a significant amount of her day is spent working around the home despite Dr. Fermo's finding that her ability to do such tasks is "severely limited." (*Id.*) He also noted that despite Dr. Fermo's finding that Williams's ability to attend meetings is severely limited by her medical diagnosis, Williams attended veterinary technician classes during her period of disability.[4] (Tr. 21.) Earlier in his

---

[4] Williams contests the ALJ's finding that she attended veterinary technician

- 5 -

opinion, the ALJ also specifically stated that activities such as these "are the same as those necessary for obtaining and maintaining employment." (Tr. 17.) The ALJ thus found that the tasks Williams undertakes on a daily basis are inconsistent with Dr. Fermo's finding that she would have "difficulty carrying out simple tasks and responding appropriately to supervision and coworkers" and supported a finding that Williams could obtain and maintain employment. (Tr. 20.) Therefore, the ALJ did not err in discrediting Dr. Fermo's medical opinion due to its inconsistencies with Williams's admitted daily activities.

### 2.     Mental Status Examinations

The ALJ also considered Williams's mental status examinations while determining what weight to assign to Dr. Fermo's testimony. (Tr. 20.) An ALJ may consider conflicts between a treating physician's treatment notes while determining what weight to give a physician's medical opinion. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) ("The ALJ also noted evidence in the record, including Dr. Van Male's own treatment progress reports that showed Valentine's improved functioning at work and encouraging comments he received from company officials." (internal citations and quotations omitted)). However, an ALJ may not create "a conflict by identifying two or three reports of improvement in [the claimant's] mental health and asserting, without reference to any other treatment records or any other explanation," that a treating physician's opinion merits little weight. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

The ALJ noted that Dr. Fermo's opinion claimed that Williams's concentration was severely limited due to side effects from her medication. (Tr. 530.) However, Dr. Fermo's mental status examinations do not support this; he did not note any problems

---

classes during the period of disability, citing to the inconsistencies in the record. Certainly the record does give rise to possible alternate explanations. However, "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The factual findings of the ALJ regarding Williams's attendance at classes are accepted because they are supported by substantial evidence in the record.

with memory in his reports, and problems with concentration are only sporadically annotated throughout the Williams's extensive medical record. (Tr. 19–20, 415, 417, 526.) Furthermore, as the ALJ noted, Williams's symptoms noticeably improved with the assistance of Zoloft. (Tr. 19, 418.) Rather than creating a conflict by cherry picking two or three medical records, the ALJ walked through the medical record as a whole early in his opinion, cited to specific mental status examinations while doing so, and ultimately found that the final opinion submitted by Dr. Fermo did not comport with his prior examinations of Williams. (Tr. 19–20.) The ALJ explained his reasoning, noting that while Williams had days where her mood fluctuated between depression and anxiety, these instances appeared to be outliers in a record that otherwise reflected "calm behavior, good eye contact, intact memory for recent and remote events, full orientation, intact judgment and insight" as well as other indications of a clinically stable claimant. (Tr. 19.) Therefore, he did not err in considering the discrepancies between Dr. Fermo's medical opinion and the mental status examinations in the record.

### 3. Relying on Subjective Symptom Reports

The ALJ noted that Dr. Fermo "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant" while forming his medical opinion. (Tr. 20.) A physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted). However, "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

The ALJ "offered no basis for his conclusion that these opinions were based more heavily on [the claimant's] self-reports," and thus he erred in discrediting Dr. Fermo's findings based on this consideration. *Id.* The ALJ stated that "[i]t appeared Dr. Fermo

relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." (Tr. 20.) He did not provide a basis for this assertion, nor did he explain how the records he cited to indicated that Dr. Fermo's medical opinion relied more heavily on Williams's self-reports than the clinical evidence. *Ghanim*, 763 F.3d at 1162. The Commissioner offers a post-hoc rationale for the ALJ, but "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Therefore, the ALJ erred to the extent that he discredited Dr. Fermo's medical opinion based on Dr. Fermo's reliance on Williams's subjective complaints.

### 4. Harmless Error Analysis

Once it has been determined that an ALJ made an error during the review of a claimant's file, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error is not prejudicial if "the ALJ's decision remains legally valid, despite such error.") Ninth Circuit precedents "do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The general rule is that an error is harmless where a court is can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

The ALJ's error here was not prejudicial, and thus there is no need to remand the case. The two preceding sections outline two other "specific and legitimate reasons that are supported by substantial evidence in the record" for dismissing the findings of Dr. Fermo. *Lester*, 81 F.3d at 831. Therefore, despite the ALJ's error in discrediting Dr. Fermo's medical opinion based on his alleged reliance of Williams's subjective complaints, substantial evidence still supported the ALJ's ultimate decision to reject Dr. Fermo's medical opinion.

### B.    The Reviewing Psychologists and the Vocational Expert

The ALJ properly incorporated the opinions of the reviewing physicians into the RFC. Dr. Pereyra found that Williams's ability to carry out short and simple instructions was "not significantly limited" and that she should be able to "carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions." (Tr. 77.) Dr. Koutrakos largely agreed with Dr. Pereyra's findings, however, Dr. Koutrakos cautioned that Williams "may experience marked limitations in interacting appropriately with the general public due to anxiety." (Tr. 108.) Therefore, Dr. Koutrakos opined that Williams would "likely perform best in environments with limited social contact."

The ALJ did not contradict the reviewing physicians' findings; rather, he incorporated them into the RFC assessment. The ALJ relied on the reviewing physicians to find that Williams is limited to "simple, repetitive tasks and simple, unskilled work with occasional changes in the work-setting." (Tr. 16.) The ALJ found that Williams has "no more than moderate limitations in social functionings," and therefore could perform work that involved "occasional interact[ion] with co-workers and supervisors, but no direct public contact in job performance." (Tr. 15.) These findings are consistent with the limitations outlined above.

At step five, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal quotations and citations omitted). This burden can be satisfied by the ALJ "pos[ing] hypothetical questions to the vocational expert that set out all of the claimant's impairments for the vocational expert's consideration." *Id.* at 1101. "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.* Here, the ALJ described the hypothetical individual as one of Williams's age and education, and who "had no exertional limitations but was limited to

performing simple, repetitive tasks and simple, unskilled work and work that required only occasional interaction with coworkers and supervisors and no direct public contact." (Tr. 63.) This hypothetical mirrors the findings of the reviewing physicians, and thus it is satisfactorily "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The vocational expert did not find that a hypothetical person in this situation would be precluded from finding employment in the national economy, and therefore Williams's argument that the ALJ misapplied the findings of the reviewing physicians is rejected. Substantial evidence supports the ALJ's finding that Williams's limitations do not preclude employment in the national economy, and thus the ALJ did not err.

### C. Credibility Analysis

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Once a claimant establishes that objective medical evidence illustrates an impairment that could reasonably cause the symptoms alleged, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 2006)). This is the most stringent standard required in social security cases. *Id.* "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Other factors that an ALJ may weigh include: the claimant's chosen course of treatment, the effectiveness of any course of treatment, functional restrictions, and the claimant's daily activities. *Id.* "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints—general findings are insufficient." *Id.* (internal quotations and citation omitted). Furthermore, "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of

treatment." *Garrison*, 759 F.3d at 1017.

### 1. Daily Activities

ALJs must be cautious when utilizing daily activities as a mechanism to discredit a claimant's testimony, "because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. However, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.3d at 639). Daily activities may also be used to discredit a claimant's testimony if they "contradict his other testimony." *Id.* An ALJ should make specific findings regarding a claimant's daily activities if he uses them to discredit her testimony. *See Burch*, 400 F.3d at 681 ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.").

The ALJ properly relied on several of Williams's daily activities to discredit her testimony by "offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (internal quotation omitted). Rather than listing Williams's daily activities as generally inconsistent with her alleged limitations, the ALJ "made additional specific findings to support his credibility determination" by detailing exactly which aspects of Williams's daily activities contradicted her testimony. *Burch*, 400 F.3d at 680. The ALJ found that Williams's allegations of diminished concentration were inconsistent with her ability to attend veterinary technician classes. (Tr. 17.) Likewise, he also found that her alleged fatigue was contradicted by her ability to perform substantive and repetitive chores on a regular basis, including bathing her pet, doing laundry, preparing meals, and cleaning her home. (Tr. 17.) The ALJ also noted that these "physical and mental activities are the same as those necessary for obtaining and maintaining

1 employment." (Tr. 17.) Therefore, the ALJ did not err in considering these
2 inconsistencies between Williams's testimony and her "numerous daily activities
3 involving skills that could be transferred to the workplace" as he weighed the credibility
4 of her testimony. *Burch*, 400 F.3d at 681.

5 However, some of the daily activities the ALJ relied upon in discrediting
6 Williams's testimony are less probative of an ability to work, and the ALJ erred in
7 relying upon them to discredit Williams's testimony. *See Garrison*, 759 F.3d at 1016
8 ("Recognizing that 'disability claimants should not be penalized for attempting to lead
9 normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of
10 activity were inconsistent with [a claimant's] claimed limitations would these activities
11 have any bearing on [her] credibility.' " (quoting *Reddick v. Chater,*157 F.3d 715, 722
12 (9th Cir. 1998)). At times, the ALJ in this case improperly relied on aspects of
13 Williams's testimony that are not inconsistent with her claimed limitations, and in doing
14 so he committed error. *See Smolen*, 80 F.3d at 1284 ("The Social Security Act does not
15 require that claimants be utterly incapacitated to be eligible for benefits, and many home
16 activities may not be easily transferable to a work environment where it might be
17 impossible to rest periodically or take medication."). For example, the ALJ discredited
18 Williams's testimony as to the extent of her anxiety toward being around others and the
19 frequency of her disabling panic attacks because she interacted with her family,
20 specifically her husband and her daughters, traveled to Sea World once in 2013 on a short
21 family vacation, and spent holidays with her in-laws. (Tr. 17, 48–49.) Additionally, the
22 ALJ found that Williams's testimony as to the extent of her anxiety was inconsistent with
23 the Williams's reported bi-weekly phone calls with her sister. (Tr. 17, 250, 297.) He also
24 found that Williams's ability to pick up her children from school conflicted with her
25 alleged troubles with concentrating. (Tr. 17.) These are basic tasks and activities
26 undertaken with Williams's immediate family members, and do not rise to the level of
27 activity that indicates that Williams "is able to spend a substantial part of his day engaged
28 in pursuits involving the performance of physical functions that are transferable to a work

setting." *Orn*, 495 F.3d at 639 (internal quotation and citation omitted). Therefore, the ALJ erred in considering them.

### 2. Objective Medical Evidence

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Furthermore, a favorable response to conservative treatment can undermine a claimant's allegations of disabling symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ noted that although Williams testified to disabling anxiety and depression, the objective medical evidence did not support her claims. (Tr. 17.) He once again relied on the mental status examinations, and explained that they "reflected no more than mild to moderate clinical findings." (Tr. 17.) Although there were times when Williams "exhibited a depressed, anxious mood and irritable mood," "most of the mental status examinations showed normal findings, including euthymic mood." (Tr. 18, 348, 407, 414.) Additionally, the ALJ found it significant that throughout many of her medical visits to her treating psychiatrist, Dr. Fermo, Williams noted that she was "doing okay" or "doing better." (Tr. 19, 411, 413, 414, 470, 471, 472.) The ALJ went on to explain that Williams improved with "counseling and psychotropic medications," specifically her Zoloft prescription, and never required hospitalization. (Tr. 17, 19, 389.) While hospitalization is not required for a finding of disability, a favorable response to conservative treatment undermines Williams's allegations of disabling anxiety. *See Tommasetti*, 533 F.3d at 1040. The ALJ concluded by specifically noting "[w]hile not the sole basis for discounting the claimant's subjective testimony, the inconsistency of the claimant's testimony and the objective medical evidence is a legitimate factor in assessing an adverse credibility factor." (Tr. 18.) Therefore, he did not err in his

considering the inconsistency of the objective medical evidence alongside other factors during his credibility determination.

### 3. Observations at the Hearing

"That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain." *Fair*, 885 F.2d at 602. The use of "so-called sit and squirm jurisprudence" is generally disfavored, but "the "inclusion of the ALJ's personal observations does not render the decision improper." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (internal quotations omitted). Therefore, "an ALJ's personal observations may be used only in the overall evaluation of the credibility of the individual's statements." *Orn*, 495 F.3d at 639.

The ALJ noted that while her symptom testimony reflected that she was not able to concentrate, Williams maintained concentration throughout her one-hour hearing. (Tr. 18.) He also noted that while she was questioned, she "appeared to process the questions without difficulty, and to respond to the questions appropriately and without delay." (*Id.*) However, the ALJ also qualified his description of Williams from her hearing by stating "[i]t is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual function capacity." (Tr. 18.) Therefore, because the ALJ included his observations of Williams at her hearing as just one aspect of his analysis of her credibility, he did not err.

### 4. Harmless Error Analysis

The ALJ improperly relied on some of Williams's daily activities that were not probative of her ability to work or inconsistent with her limitations to discredit her testimony. Therefore, the next step is to determine whether the ALJ's error was harmless. *See Carmickle*, 533 F.3d at 1162 ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."). An error is harmless if the "ALJ's decision remains legally valid, despite such error." *Id.* An ALJ's decision remains

1  legally valid "[s]o long as there remains 'substantial evidence supporting the ALJ's
2  conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's
3  ultimate [credibility] conclusion.' " *Id.* (quoting *Batson*, 359 F.3d at 1197).

4        The ALJ in this case improperly considered a handful of Williams's activities to
5  discredit her testimony, but he also properly relied on other activities that did provide
6  legitimate reasons to question her credibility.  These include her ability to engage in
7  substantial household chores on a daily basis despite her allegations that she was
8  constantly fatigued and her ability to attend veterinary classes despite claiming that she
9  had significant troubles with concentration.  (Tr. 17.)  The ALJ also noted that the
10 objective medical evidence of the record contradicted the severity of the symptoms
11 described by Williams.  (Tr. 17–18.)  The ALJ further supported his analysis by also
12 noting that Williams's demeanor at the hearing did not match the symptoms that she
13 described in her testimony.  (Tr. 18.)  Taken together, the ALJ's consideration of
14 appropriate daily activities as well as the inconsistencies within the medical record and
15 the ALJ's observations at the hearing provide substantial evidence for the ALJ's
16 credibility finding. *See Batson*, 359 F.3d at 1197 (finding that striking down one
17 justification for discrediting a claimant's testimony amounted to a harmless error where
18 the ALJ presented other reasons for discrediting the testimony that were supported by
19 substantial evidence in the record).  Therefore, the limited errors that the ALJ made in his
20 credibility analysis were not prejudicial, and thus there is no need to remand this case
21 back to the ALJ.

## CONCLUSION

      The ALJ erred by dismissing Dr. Fermo's medical opinion based on the allegation
that Dr. Fermo relied too heavily on Williams's subjective complaints and by relying on
improper daily activities to discredit Williams's testimony. However, his error was not
prejudicial as to Dr. Fermo because he properly dismissed Dr. Fermo's findings due to
contradictions with the objective medical record as well as Williams's daily activities.
Likewise, his errors in discrediting Williams's symptom testimony are not prejudicial

because he provided other specific, clear and convincing reasons for doing so that were supported by substantial evidence in the record.  The ALJ did not err in creating the RFC. Therefore, the ALJ's findings in this case are affirmed.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED** and the Clerk of Court is directed to enter judgment accordingly.

Dated this 31st day of March, 2017.

Honorable G. Murray Snow
United States District Judge